IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY MARSH, | ) | CASE NO. 5:10-CV-438 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 11). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Beverly Marsh's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court REVERSES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

**I. INTRODUCTION & PROCEDURAL HISTORY**

On October 12, 2005, Beverly Marsh ("Plaintiff" or "Marsh") applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income alleging that she became disabled on August 12, 2005, due to suffering from depression, anxiety, hyper-sensitivity and agoraphobia with panic attacks. (Tr. 91-96, 115). Marsh's applications for benefits were denied

initially and upon reconsideration.  (Tr. 41-49, 52-60).  She timely requested and was granted an administrative hearing.  (Tr. 61-63).

On July 18, 2008, Administrative Law Judge John D. McNamee-Alemañy ("ALJ McNamee-Alemañy" or the "ALJ") held a hearing via video conference during which Plaintiff and vocational expert, Mr. Ted Macy (the "VE"), testified.  (Tr. 20-36).  The ALJ presided over the hearing from Falls Church, Virginia, and Plaintiff and the VE appeared in Cleveland, Ohio. (Tr. 10).  On August 29, 2008, ALJ McNamee-Alemañy issued a written decision denying Plaintiff's applications for benefits.  (Tr. 10-19).  The ALJ's decision explained how he applied the five-step sequential evaluation,[1] and concluded that Plaintiff was not disabled.  *Id.*  Subsequently, Marsh requested

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

review of the ALJ's decision from the Appeals Council. (Tr. 6). However, on January 22, 2010, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

Plaintiff, born on January 25, 1960, was forty-five years old on her alleged onset date, and considered a younger person for Social Security purposes. (Tr. 17, 91); 20 C.F.R. §§ 404.1563(c), 416.963(c). She completed high school and received vocational training in office clerical duties. (Tr. 122). Marsh has prior experience working as a cleaner for an apartment complex. (Tr. 30). Her date last insured for Disability Insurance benefits was December 31, 2009. (Tr. 106).

## II. ALJ'S DECISION

After completing a review of the record, ALJ McNamee-Alemañy determined that Marsh was not disabled under the Social Security regulations. (Tr. 10-19). At step one of the sequential evaluation analysis, the ALJ found that Marsh had not engaged in substantial gainful activity since her alleged onset date of August 12, 2005. (Tr. 12). At step two, ALJ McNamee-Alemañy ruled that Plaintiff suffered from the following severe impairments: panic disorder with agoraphobia in partial remission with treatment and major depressive disorder (recurrence without psychotic features). (*Id.*). Yet, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-13).

Before moving to step four, the ALJ found that Marsh retained the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 13). However, he noted that Plaintiff had the following nonexertional limitations: she was limited to simple work, involving only two or three steps, she could have nor more than

seldom interaction with the public, and her work could not involve intense production stress. (*Id.*). At step four, ALJ McNamee-Alemañy ruled that Marsh could not return to her past relevant work as an apartment complex cleaner because the physical requirements of the job exceeded her RFC. (Tr. 17). But, at step five, the ALJ found that Plaintiff's RFC permitted her to perform other work which existed in significant numbers in the national economy. (Tr. 17-18). Specifically, the ALJ indicated that Marsh could work as a bench assembler, wire worker, or as a final assembler. (Tr. 18).

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The

Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Garner, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

## V. <u>ANALYSIS</u>

Marsh challenges the ALJ's decision on three grounds. First, Plaintiff submits that the ALJ failed to articulate sufficient reasons for rejecting the opinions of her treating physician and treating psychiatrist. Marsh's second assignment of error asserts that ALJ McNamee-Alemañy improperly discredited her testimony regarding the severity of her mental impairments and the symptoms accompanying her impairments. Lastly, Plaintiff argues that substantial evidence does not support the ALJ's finding at step five because the hypothetical question the ALJ posed to the VE did not accurately describe Plaintiff's maladies.

### 1. <u>Treating Physicians</u>

Marsh submits that ALJ McNamee-Alemañy failed to comply with the so-called "treating physician rule" by failing to articulate adequate reasons for rejecting the opinions of Plaintiff's treating physician, Dr. Nutan Poseria, and Plaintiff's treating psychiatrist, Dr. Melodie Morgan-Minott. When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating sources. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians

5

who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

Even when a treating physician's opinion is not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion.  *Id*.  These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factors that may support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).  The regulations also require the ALJ to provide "good reasons" for the weight he/she ultimately assigns to the treating source's opinions.  *Id*.

The Sixth Circuit announced that the good reasons requirement serves a two-fold purpose. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that h[er] physician has deemed h[er] disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted).  Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.* at 243.  Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to a treating source's opinions, even though "substantial evidence

6

otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011) (*quoting Wilson*, 378 F.3d at 543-46).

### a. Dr. Poseria

Marsh argues that ALJ McNamee-Alemañy's decision should be remanded because the ALJ failed to appropriately weigh the opinion of her treating physician, Dr. Poseria. The record contains several treatment notes from Dr. Poseria, but one is of particular significance. On January 5, 2006, Dr. Poseria completed a medical assessment form evaluating Plaintiff's impairments for the Social Security Administration. (Tr. 170-77). In the assessment, Dr. Poseria indicated that she first treated Plaintiff in 1991 and that she last saw Marsh in December 2005. (Tr. 171). She diagnosed Marsh with anxiety, depression and panic attacks. (Tr. 173). Dr. Poseria further commented that Plaintiff's panic attacks rendered her "unable to function." (Tr. 174). However, the doctor indicated that Plaintiff's physical and mental limitations would only last between 30 days and nine months. (Tr. 175). Additionally, on the portion of the assessment specifically inquiring about Plaintiff's mental functioning, Dr. Poseria remarked that she deferred to Marsh's psychiatrist regarding Marsh's mental health.

The ALJ acknowledged Dr. Poseria's treatment of Plaintiff and the findings contained within her assessment submitted to the Social Security Administration. However, the ALJ assigned little weight to Dr. Poseria's assessment, stating that the doctor's "treatment notes d[id] not support h[er] opinions." (Tr. 17). The ALJ also commented that "Dr. Poseria's treatment was directed towards the claimant's physical health." (Tr. 16). Aside from these two statements, the ALJ neglected to offer any other insight explaining the reasons why he assigned little weight to Dr. Poseria's findings.

The undersigned concludes that the reasons provided by the ALJ for discounting Dr. Poseria's opinions were not sufficient to satisfy the twin goals of the good reasons requirement. The ALJ's

7

reasoning does nothing more than provide a superficial basis for discrediting Dr. Poseria's findings. The ALJ did not offer any explanation as to how Dr. Poseria's treatment notes were unsupportive of her findings. Although it was appropriate for ALJ McNamee-Alemañy to examine whether Dr. Poseria's opinions were well-supported, the ALJ's brief statement that the doctor's findings did not comport with this requirement was not specific enough to apprise Marsh or this Court of why Dr. Poseria's opinions were being rejected. This failure alone warrants remand. As the Sixth Circuit has explained:

> A failure to follow the procedural requirement "of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record. . . . Thus, while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be "sufficiently specific" to meet the goals of the "good reason" rule.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (internal citation omitted).

Remand is also necessary because the reasons offered by the ALJ for discounting Dr. Poseria's opinion cause concern to the Court as it appears that the ALJ's decision to discount Dr. Poseria's opinion was somewhat based upon the ALJ's erroneous conclusion that Dr. Poseria's treatment of Marsh was only directed towards Plaintiff's physical health.[2] (Tr. 16). This assertion is simply inaccurate. While the doctor certainly managed Plaintiff's physical health, it is clear that Dr. Poseria also treated Plaintiff's mental health problems. For example, Dr. Poseria's treatment notes show that Marsh complained to her regarding problems with anxiety and depression from September 2004

---

[2]The undersigned notes that the records ALJ McNamee-Alemañy cites in support of finding that Dr. Poseria's treatment focused on Marsh's physical health are lab reports from Robinson Memorial Hospital illustrating the results of various tests performed on Plaintiff. (*Compare* Tr. 16 citing Exhibits 17F, 20F and 22F *with* Tr. 234-86, 321-28, 344-46).

through May 2006. (Tr. 239-46). In fact, during the course of her treatment of Plaintiff, Dr. Poseria administered Marsh a test to evaluate her anxiety, in which Marsh scored very high. (Tr. 243). Dr. Poseria also prescribed Plaintiff medications such as Paxil, Lorazepam, Klonopin, Xanax and Buspar to help manage Plaintiff's anxiety, panic attacks and depression. (*Id.*, Tr. 220). These records demonstrate that Dr. Poseria's care was not solely limited to addressing Plaintiff's physical health and further undermines the ALJ's decision to discount the weight given to the doctor's opinions.

In response, Defendant submits a number of plausible reasons supporting the ALJ's decision to accord little weight to Dr. Poseria's opinions. Yet, as Plaintiff noted, Defendant's arguments amount to nothing more than improper *post hoc rationalizations* which are insufficient to sustain the ALJ's decision. *See S.E.C. v. Chenery*, 332 U.S.194, 196, 67 S.Ct.1575 (1947). Initially, the Commissioner suggested that the ALJ's treatment of Dr. Poseria's opinions was proper because as an internist, Dr. Poseria's opinions regarding Plaintiff's mental state were outside of her area of expertise. While Defendant is correct that an ALJ may consider a treating source's area of expertise in order to determine how much weight to accord to the doctor's opinion, it is not necessarily true that opinions offered regarding matters beyond the physician's specialty should be automatically rejected on such grounds. For example, in *Payne v. Commissioner of Social Security*, this Court remanded an ALJ's decision ruling that the ALJ should not have wholly rejected the physician's opinions regarding the claimant's mental health, even though the doctor was not a psychiatrist or a psychologist. No. 1:09-CV-140, 2010 WL 3370268, at *2 (N.D. Ohio Aug. 26, 2010) (Economus, J.) ("[T]he fact that Dr. Wise is not a mental health specialist does not mean that her observations of the plaintiff over an eight month period, plus her review of the plaintiff's records prior thereto, would not give her reliable insights into the plaintiff's mental/emotional state."). Likewise, even assuming arguably that ALJ McNamee-Alemañy did reject Dr. Poseria's opinions because they concerned issues outside of the

9

doctor's area of expertise, the ALJ's decision to do so was still erroneous because Dr. Poseria's treatment of Plaintiff, which lasted for over a decade, provided the doctor with considerable insight into Marsh's mental state.  Though not a mental health professional, Dr. Poseria's training and treatment of Plaintiff, led her to prescribe Plaintiff anxiety medication and eventually led her to refer Marsh to a such a professional.  Under this circumstance, it would have been improper for the ALJ to reject Dr. Poseria's opinion solely on the ground that she was not a mental health specialist.  *See Price v. Comm'r of Soc. Sec.*, No. 1:08-CV-15, 2009 WL 973496, at *12 (S.D. Ohio Apr. 19, 2009) ("[W]hile Dr. Glickfield is not a psychiatrist and thus did not specialize in mental health treatment, his training and licensing as a family physician still made him qualified to treat and prescribe such medications for Plaintiff. . . . [T]he ALJ's rejection of Dr. Glickfield's opinion for the sole reason that he was not a mental health professional, sidesteps the reason-giving requirements of the Regulations." (internal quotations omitted)); *see also Moreland v. Astrue*, No. 08-90-GWU, 2009 WL 735776, at *5 (E.D.Ky. Mar. 18, 2009) (ruling that it was not proper for the ALJ to reject the treating source's opinion due to his lack of specialization).

The undersigned also rejects Defendant's claim that the ALJ's treatment of Dr. Poseria's opinion was reasonable because Dr. Poseria's opinion was inconsistent with the record evidence. Despite the fact that the ALJ never made this argument, Defendant's assertion is unconvincing for two reasons.  First, Defendant's brief misstates several pieces of evidence within the record in an attempt to show that Plaintiff's condition was improving, rather than being as Dr. Poseria suggested.  For example, Defendant claimed that shortly before Dr. Poseria offered her opinion, she noted that Plaintiff's condition was improving, but the record Defendant cites to was actually penned by Dr.

Morgan-Minott, and moreover, certainly does not reflect that Marsh's condition was improving.³ (Def.'s Br. at 15; Tr. 230). Additionally, the Commissioner purported that Plaintiff herself admitted that her medications were helping her. Yet again, the records Defendant points to are not entirely supportive of its proposition. The first of the two documents Defendant cites states nothing regarding Plaintiff's condition improving, but rather indicates that Marsh was still very depressed. (Tr. 241). Although the second treatment note Defendant relies upon does refer to the effectiveness of Plaintiff's medication, Defendant mischaracterized its import. The treatment note indicates that Plaintiff had been having problems taking her whole dose of a particular medication. The doctor's comments state that Marsh was splitting the pill in half in order to take the medication, and then remarked "but it works." (Tr. 242). Thus, Defendant's portrayal of the comment as showing that Plaintiff's condition was improving is a mischaracterization of the evidence, especially given the fact that this same treatment note reflects Dr. Poseria's diagnosis of panic attacks and severe anxiety. *Id.* Secondly, the Court is also unpersuaded by Defendant's argument that the ALJ was free to credit the opinions of the state agency physicians over Dr. Poseria's opinions. The Commissioner posits that it was reasonable for ALJ McNamee-Alemañy to credit the opinions of the two state agency reviewing physicians who opined that Plaintiff was capable of performing a limited range of work. However, "[t]he opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (*quoting Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam)). Therefore, neither state agency reviewing doctor's opinion would have necessarily provided a sufficient basis for rejecting Dr.

---

³The treatment record appearing at page 230 of the transcript states as follows, "Pt states she is too nervous to travel/drive - can't go to work- can't go home. Staying [with] parents. Recent memory is poor, feels hopeless. Has panic attacks if she goes home at night."

Poseria's opinions. *Id.* Defendant also points to records from one-time examining psychologist, Dr. Gary Sipps, and treating psychologist, Dr. Nanjundiah, to justify the ALJ's treatment of Dr. Poseria's findings. But, the fact remains that ALJ McNamee-Alemañy did not expressly rely on this information in discrediting Dr. Poseria's opinions, and consequently Defendant's argument cannot cure the ALJ's errors. Lastly, although Dr. Poseria indicated that she only expected Marsh's symptoms to last between 30 days and nine months, this statement in itself did not excuse the ALJ from his responsibility to offer adequate reasons for rejecting the doctor's opinion. Here, it is clear to the Court that ALJ McNamee-Alemañy failed to satisfy his duties under the treating physician rule with respect to Dr. Poseria's opinions.

### b. Dr. Morgan-Minott

Marsh further contends that remand is warranted due to the ALJ's failure to acknowledge the opinions offered by her treating psychiatrist, Dr. Melodie Morgan-Minott, who opined that Marsh's mental impairments rendered her unemployable. (Tr. 230). In December 2005, Dr. Morgan-Minott completed a Mental Functional Capacity Assessment for the Social Security Administration. (Tr. 229-30). In it, Dr. Morgan-Minott indicated that Plaintiff was moderately limited in 18 out of 20 areas of mental functioning. (Tr. 229). The psychiatrist noted that Marsh was markedly limited in the remaining two areas, consisting of: 1) the ability to perform activities within a schedule and maintain regular attendance; and 2) the ability to complete a normal workday and workweek without psychologically based interruptions. *Id.* Dr. Morgan-Minott also noted on the assessment form that she had only seen Marsh twice prior to completing the evaluation, and that she expected Plaintiff's mental limitations to last between 30 days and nine months. No where in the ALJ's written decision did he specifically address Dr. Morgan-Minott's findings.

The Commissioner disputes Dr. Morgan-Minott's classification as a treating physician. Because Dr. Morgan-Minott had only examined Plaintiff two times prior to rendering her opinion, Defendant argues that Dr. Morgan-Minott's opinions would not qualify as those of a treating physician, and therefore, were not entitled to any special deference. Dr. Morgan-Minott noted that she saw Plaintiff on November 2, 2005 and again on November 29, 2005. "The Commissioner will consider a claimant to have an ongoing treatment relationship when the medical evidence establishes that the claimant sees, or has seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the claimant's medical conditions." *Daniels v. Comm'r of Soc. Sec.*, 125 F. App'x 485, 491 (6th Cir. 2005) (*citing* 20 C.F.R. § 404.1502) (internal quotations omitted).

Interestingly, Plaintiff's reply brief did not respond to Defendant's challenge of Dr. Morgan-Minott's status as a treating source. Nevertheless, whether Dr. Morgan-Minott should have been viewed as a treating source or not is only germane to the question of whether her opinion was entitled to any special amount of deference. It did not, however, discharge the ALJ of his duty to evaluate Dr. Morgan-Minott's opinion and explain how it impacted his decision. 20 C.F.R. §§ 404.1527(d); 416.927(d). Once again, Defendant has come forward with a number of possible reasons justifying the ALJ's rejection of Dr. Morgan-Minott's opinions. While it may have been reasonable for the ALJ to discount Dr. Morgan-Minott's findings because he perceived them as being based upon Plaintiff's subjective complaints as Defendant theorizes, the undersigned cannot affirm the ALJ's decision based upon speculation. Because ALJ McNamee-Alemañy completely failed to acknowledge Dr. Morgan-Minott's opinions, it is impossible for the Court to know whether the ALJ justifiably discounted the psychiatrist's findings, or, whether the ALJ merely inadvertently overlooked the doctor's findings during his review of the record. Consequently, on remand, the ALJ should also directly address Dr.

13

Morgan-Minott's opinions and the weight that the ALJ accords to the doctor's findings.

### 2. Plaintiff's Credibility

Credibility determinations are the prerogative of the ALJ. The Social Security regulations set forth the criteria an ALJ should evaluate when assessing the credibility of a claimant's testimony. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii); 404.1529(c)(3)(i)-(vii). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Yet, the ALJ must clearly state his reasons when rejecting a claimant's complaints as incredible. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (*citing Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

ALJ McNamee-Alemañy indicated that he did not find Marsh's statements regarding the intensity, persistence and limiting effects of her mental impairments to be credible. In explaining his decision, the ALJ stated that Plaintiff's medical record did not support her alleged symptoms and that his observations of her throughout the hearing demonstrated that she was able to maintain focus and provide lucid answers to questions. The ALJ also commented that Marsh showed "[n]o signs of panic or excessive anxiety" during the hearing, although she was tearful at times. (Tr. 16).

Marsh challenges the ALJ's negative credibility finding on two bases. First, she argues that the ALJ's determination that she showed "no signs of panic or excessive anxiety" was improper because the ALJ should have sought the opinion of a medical expert to determine whether she was exhibiting signs of panic or anxiety during the hearing. Furthermore, she submits that because the hearing only lasted for 38 minutes, her behavior during such time in no way reflected her ability to

perform work on a sustained basis.  Second, Marsh asserts that the ALJ's credibility finding was deficient because he relied only on the medical evidence in the record which supported his decision, while disregarding the evidence that detracted from his ruling.

Because the Court finds that remand is necessary due to the ALJ's errors with respect to his evaluation of the medical opinion evidence, it will only briefly address Plaintiff's arguments on this issue.  While it is clearly acceptable for an ALJ to reflect upon his observations of the claimant's demeanor in contemplation of the veracity of the claimant's testimony, it remains impermissible for the ALJ to substitute his opinions for those of a medical expert.  *See Simpson v.  Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009)*.  In the instant case, it is arguable that ALJ McNamee-Alemañy blurred the lines between observing a claimant's demeanor for purposes of rendering a credibility determination, and using those same observations impermissibly to determine the severity of the claimant's medical impairments.  In other words, when the ALJ commented that Marsh displayed "no signs of panic or excessive anxiety" during the hearing, it is not entirely clear whether he was making the statement in his capacity as an adjudicator in observing Plaintiff, or, if he was implying that had Marsh's anxiety and panic been so severe as to be disabling, it would have manifested in such a way that a layperson would have been able to observe it at some point during the 38-minute hearing.  The latter of these views is more problematic because it puts the adjudicator in the shoes of a medical professional rendering medical judgments.  Should the ALJ have inquiries as to the medical significance of Plaintiff's behavior during the hearing, he should seek the opinion of a medical expert to testify regarding these issues.  Although there may be other reasonable explanations to support ALJ McNamee-Alemañy's disfavorable credibility finding, these reasons are not abundantly clear from the Court's review of the ALJ's opinion.  Remand will provide a second opportunity for the ALJ to better articulate his reasons for finding Marsh's testimony incredible, and why he rejected the evidence

supporting Plaintiff's claim for benefits.

### 3. Hypothetical Question

Finally, Marsh challenges the ALJ's ruling at step five of the sequential evaluation process, finding that she could perform work existing in significant numbers in the national economy. In doing so, Marsh asserts that the hypothetical questions the ALJ posed to the VE did not include any restrictions related to her physical limitations. Plaintiff submits that her medical record demonstrates that she suffers from degenerative disc disease, degenerative spondylolisthesis, back pain and lower extremity radiculopathy.

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays plaintiff's individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (*citing Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). The Sixth Circuit recognizes that "[i]f the [ALJ's] hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (*citing Hardaway v. Sec'y of Health & Human Servs.* 823 F.2d 922, 927-28 (6th Cir. 1987)). During the hearing, neither Plaintiff nor her attorney mentioned that her disability application was based upon any physical impairment. In fact, at the end of the hearing, the ALJ asked counsel whether there was anything he wanted to add or ask Plaintiff, and counsel responded in the negative. (Tr. 35). An "ALJ is entitled to presume that a claimant who was represented by counsel has made his best case." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (*citing Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). Considering that Plaintiff failed to present any evidence to the ALJ regarding her physical impairments, the ALJ was not required to include any such restrictions in the hypothetical question he posed to the VE.

Nevertheless, because this case is being remanded, Plaintiff will have another chance to present evidence of her physical and mental impairments to the ALJ, demonstrating why she is entitled to receive disability benefits.

## VI.  **DECISION**

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court REVERSES and REMANDS the decision of the Commissioner to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: October 11, 2011.